IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STEVE R. PEACOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:07cv458-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

The plaintiff, Steve R. Peacock ("Peacock"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. Peacock then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. § 404.1520, §416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Peacock was 48 years old at the time of the hearing before the ALJ. (R. 366.) He has completed the ninth grade. (*Id*.) Peacock's prior work experience includes working as a mechanic. (R. 75, 368.) Peacock alleges that he became disabled on May 28, 2004, due to a repaired bilateral hernia, ankle problems, lumbar disc disease, a bulging disc, rotator cuff surgery, arthritis, bone spurs, gastritis, sinus problems, and a hernia. (R. 63-64, 365, 367.) Following the hearing, the ALJ concluded that Peacock suffers from severe impairments of lumbar degenerative disc disease, left ankle osteochondral defect status post arthroscopy, synovectomy and OATS transfer, and right shoulder impingement status post rotator cuff

repair, distal clavicle excision, and subacromial decompression. (R. 13.) The ALJ also determined that Peacock is unable to perform his past relevant work. (R. 16.) Based on the testimony of a vocational expert, the ALJ concluded that there were a significant number of jobs existing in the national economy that Peacock could perform, including working as an assembler, courier, and mail clerk. (R. 17.) Accordingly, the ALJ concluded that Peacock was not disabled. (*Id.*)

### IV. The Plaintiff's Claims

As stated by Peacock, he presents the following issues for the court's review:

1. Should the District Court remand this case to the Commissioner for consideration of new evidence under a sentence 6 remand?

2. Does substantial evidence support the ALJ's determination that the claimant can perform a wide range of work at the light exertional level?

    A. The ALJ erred by finding claimant's allegations of pain and physical limitations not fully credible.

    B. The ALJ failed to consider the combined effect of the claimant's impairments.

(Doc. No. 15, Pl's Brief, p. 1.)

### V. Discussion

#### A. The New Evidence

Peacock asserts that this case should be remanded to the Commissioner under the sixth sentence of section 405(g). Specifically, he argues that a functional capacity evaluation form signed by Dr. Sewell was completed after the administrative hearing and therefore was not available for the ALJ's consideration. In addition, Peacock maintains that the omission of the

4

evaluation form from the administrative transcript indicates that the Appeals Council did not consider the new evidence.  The Government argues that Peacock's request for a remand is unwarranted because the supplemental transcript filed in this court indicates that the new evidence was considered by the Appeals Council.

The administrative transcript indicates that the functional capacity evaluation form prepared by Dr. Joseph Sewell was not provided to the ALJ.  The administrative transcript includes a "memorandum brief in support of appeal," in which Peacock's counsel requests the Appeals Council to consider the functional capacity evaluation form prepared by Dr. Sewell and indicates that the form was attached to her memorandum brief. (R. 7B.)  Although the initial administrative transcript does not include Dr. Sewell's evaluation form, the form is included in a supplemental transcript.[4] (Doc. No. 23.)  In addition, the Appeals Council indicated in its decision denying Peacock's request that it had "considered the reasons [Peacock] disagree[d] with the decision and the additional evidence . . . ." (R. 4.)  Thus, Dr. Sewell's evaluation was properly submitted to the Appeals Council, which considered the evaluation and incorporated it into the administrative record.  Sentence six allows the court to remand to the Commissioner to consider previously unavailable evidence; it does not, however, grant a court the power to remand for reconsideration of evidence previously considered by the Appeals Council.  *See Ingram v. Astrue*, 496 F.3d 1253, 1269 (11th Cir. 2007).  Consequently, Peacock is not entitled to a remand pursuant to the sixth sentence of section 405(g) of the Regulations.

---

[4] In a supplemental certification, the Chief of Court Case Preparation and Review Branch 4, Office of Appellate Operations certified that the supplemental transcript is a true and accurate copy of page 7C which was inadvertently omitted from the administrative record.  (Doc. No. 23.)

## B. The Credibility Analysis

Peacock asserts that the ALJ failed to properly evaluate and credit his complaints of pain and failed to consider the combination of his impairments when determining that he has the residual functional capacity to perform a wide range of work at the light exertional level.

During the hearing before the ALJ, Peacock testified that he suffers from back pain which runs down his back to his left foot and prevents him from bending and lifting objects and sleeping comfortably. (R. 375-76.) He also stated, "one side's on fire and the other side just hurts like you're mashing it with a pair of pliers and I just can't hardly walk." (R. 374.) Peacock maintained that, after receiving an epidural shot, the pain is "a little more bearable" and the pain remains at a slightly lower intensity level of seven for approximately two and a half months. (R. 375.) In addition, Peacock testified that he suffers from pain in both shoulders, which prevents him from lifting no more than fifteen pounds with his left hand and no more than a jug of milk with his right hand. (R. 373, 377.) Peacock is unable to pick up his two-year old son or raise or lift anything with his right arm over his shoulder. (R. 371, 377.) He further stated that, due to his ankle, foot, and leg pain, he is unable to walk more than fifty yards at a time or stand still for more than a few minutes. (R. 370-71, 375.)   The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such

severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553.

The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true. This standard requires that the articulated reasons be supported by substantial reasons. If there is no such support, the testimony must be accepted as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

The medical evidence demonstrates that Peacock suffers from back, shoulder, and foot pain. For example, in November 2001, Peacock had arthroscopic surgery for the treatment of an osteochondral defect of his left ankle, including the medial talar dome. (R. 159.) In August 2002, an MRI of Peacock's lumbar spine indicated moderate right facet hypertrophy at L2-3, minimal posterior spondylosis and minimal broad-based annular bulging at L4-5, dilation of the nerve root sheaths at L5-S1, and dilation of the perineural sheaths primarily within the foraminal at S1-2. (R. 153, 247) In June 2004, Peacock had arthroscopic surgery for treatment of supraspinatus tendonitis with rotator cuff tear of the right shoulder, painful distal clavical, and Type II acromion. (R. 251-52.) On June 28, 2005, Peacock had additional arthoroscopic surgery with synovectomy of the left ankle for treatment of a large osteochondral defect of the medial talar dome. (R. 331.) Therefore, Peacock meets the first

prong of the pain standard.

However, the Commissioner determined that Peacock's testimony of disabling pain was not credible. Specifically, the Commissioner determined that the objective clinical findings demonstrated that Peacock's spine had only mild to moderate abnormalities, that the treating and consultative examining physicians noted negative straight leg raises, that no physician has recommended surgery for his back condition, and that he has received conservative treatment for his back pain. (R. 15.) In addition, the Commissioner noted that Peacock's orthopedic surgeries for his shoulder and ankle conditions were successful and that no physician has reported any specific functional limitations. (R. 15-16.)

Substantial evidence in the record supports the Commissioner's finding that the medical records are inconsistent with Peacock's allegations that he suffers disabling pain. In August 2002, Peacock's treating physician, Dr. Sewell, noted that there was no indication for surgery and recommended alternative treatment options. (R. 247.) Although Peacock frequently sought treatment for back and leg pain, the medical records demonstrate that the extent of his pain was temporarily alleviated after receiving epidural injections once every three months and taking Lortab on a daily basis.[5] (R. 197, 201, 211, 218, 227-28, 230, 233, 238, 268, 275, 279, 282, 294, 297, 300, 304, 343-47, 353, 358, 360.)

The medical records also indicate that Peacock's surgery to treat his right shoulder condition was successful. (R. 252, 261-62.) After conducting surgery in June 2004, Dr. Bruce Hall, an orthopedic surgeon, recommended that Peacock refrain from working until his

---

[5] The court notes that, on or around January 2004, Peacock reported to the Southeast Alabama Medical Center that he is able to lift and carry no more than fifty pounds. (R. 285.)

condition improved. On August 11, 2004, he advised that he would allow Peacock "to return to work next Monday, August 16, 2004, with instructions to avoid heavy lifting overhead." (R. 262.) Six weeks later, Dr. Hall determined that Peacock's shoulder demonstrated full range of motion and that Peacock had "five out of five motor strength." (R. 261.) At that time, Dr. Hall released Peacock "to work without restrictions beginning next week." (*Id.*)

      The surgical procedures on Peacock's left ankle also temporarily alleviated or lessened his pain. One month after performing the initial surgery in December 2001, Dr. David W. Alford, an orthopedic surgeon, noted that Peacock's left ankle was stable with excellent range of motion and minimal swelling and that Peacock indicated that "his pain is much improved." (R. 271.) In February 2002, Peacock reported that he had "no pain, popping, clicking, catching or swelling" of the left ankle. (R. 269.) Three years later, on March 16, 2005, Peacock presented to Dr. Alford with complaints of ankle pain over the past four months. (R. 342.) On June 28, 2005, Dr. Alford concluded that the previous debridement and drilling had failed and performed a second surgical procedure. (R. 311.) On September 13, 2005, Dr. Alford conducted an examination, noting "painless ROM of the ankle except at the maximum plantar flexion which is sore." (R. 335.) Dr. Alford also noted that, when offered work release, Peacock stated that "he [was] in between jobs at this time." (*Id.*) During a follow-up examination on January 5, 2006, Peacock reported some swelling of his ankle and that "he has gotten along with Tylenol and Motrin."[6] (R. 348.) Dr. Alford determined that

---

[6] In his decision, the ALJ noted as follows:

> . . . . [T]he claimant told Dr. Alford in January 2006 that he had "gotten along with Tylenol and Motrin" following his ankle surgery. This statement is contradicted by treatment records from Southeast Pain Management Center showing regular prescriptions for Lortab from October 2002 through

9

radiographs indicated a "healed OATS transfer that is just a touch incongruous on the bone surface" and recommended that Peacock use a medial heel wedge to "off load the medial side." (R. 348.) In addition, Dr. Alford determined that Peacock suffered from "ankle pain status post OATS transfer," that he had full range of motion of his ankle, and that he "could return to activities as tolerated." (*Id*.) Dr. Alford also prescribed Ultram.[7] (*Id*.)

Given that the medical records demonstrate that Peacock has responded well to surgery, that his pain decreases after receiving injections or other treatment, and that medical testing demonstrates that Peacock exhibits good range of motion and his muscular strength is not diminished, the court concludes that the Commissioner's determination that the objective medical evidence does not support the severity of symptoms alleged by Peacock is supported by substantial evidence.

The ALJ considered that Peacock's condition was capable of giving rise to some pain; however, he concluded that his condition was not so severe as to give rise to the disabling pain as alleged. The ALJ has discretion to discredit a claimant's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt*, 921 F.2d at 1223.

---

June 2006.

(R. 15.) Peacock argues, and the Government does not dispute, that the ALJ incorrectly noted an inconsistency with regard to over-the-counter versus prescription medications. (Doc. No. 15, p. 9-10; Doc. No. 22, p. 13.) The medical records indicate that Southeast Alabama Pain Center treated Peacock for his complaints of shoulder and back pain and that Dr. Alford at Southern Bone and Joint Specialist treated him for his complaints of ankle pain. Thus, Lortab was prescribed for the management of back pain and Tylenol and Motrin were used for the management of breakthrough ankle pain. Although the court recognizes that the ALJ's factual determination was inaccurate, this finding was only one of several credibility factors discussed. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding harmless error in the context of the case where ALJ made erroneous statements of fact).

[7] Ultram, also known as Tramadol Hydrochloride, is indicated for the management of moderate to moderately severe pain. Physicians' Desk Reference 53rd ed. (1999) at p. 2255.

A reviewing court will not disturb a clearly articulated credibility finding where there is substantial evidence in the record to support the finding. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). The ALJ's reasons for discrediting Peacock's testimony of disabling pain were both clearly articulated and supported by substantial evidence. After a careful review of the record, the court concludes that the ALJ properly discounted Peacock's testimony of pain.

Peacock also complains that the ALJ failed to properly credit the opinion of his treating physician, Dr. Sewell. Specifically, Peacock asserts that the Commissioner improperly discounted Dr. Sewell's opinion that he suffers from significant limitations. The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The Commissioner "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

As previously discussed, the Commissioner received, and considered, the residual functional capacity evaluation form prepared by Peacock's treating physician, Dr. Sewell, and concluded that the information did not provide a basis for changing the ALJ's determination

that Peacock has the residual functional capacity to perform a broad range of light work. (R. 4-5, 16.) In the December 1, 2006, evaluation form, Dr. Sewell assessed that Peacock would be unable to sit, stand, or walk at least six hours during an eight-hour work day, that he would be unable to lift more than ten pounds, that he would be unable to push or pull repetitively, and that he would be unable to squat, crawl, climb, or reach overhead. (Doc. No. 23, p. 2.) First, the court notes that the medical records indicate that Peacock was last treated by Dr. Sewell on May 27, 2004. (R. 242.) Thus, Peacock was not treated by Dr. Sewell during the relevant time period. Secondly, Dr. Sewell's conclusory opinions are not supported by clinical or laboratory findings and are inconsistent with other evidence of Peacock's impairments. For example, the orthopaedic specialists who treated Peacock during the relevant time period released him to work without assigning any permanent work restrictions. (R. 335, 348.) Moreover, when offered work release, Peacock indicated that he was "in between jobs." (R. 335.) Given the lack of objective medical evidence to support Dr. Sewell's conclusory assessment that Peacock suffers from significant limitations, as well as the passage of time between Peacock's last visit to Dr. Sewell and the date of the functional capacity evaluation, the court concludes that the Commissioner's finding that Peacock is not disabled is supported by substantial evidence. Moreover, there is no indication that the Commissioner substituted his own judgment for that of Dr. Sewell's opinions. Consequently, the Commissioner did not err as a matter of law in rejecting Dr. Sewell's opinion that Peacock suffers from substantial limitations.

To the extent Peacock asserts that the ALJ failed to consider the effects his prescribed medications have on his ability to work, he is entitled to no relief. During the hearing,

Peacock testified that Lortab makes him sleepy. (R. 372.) The ALJ must consider the side effects of Peacock's medication where their existence is supported by substantial evidence. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). However, there is no medical evidence demonstrating that Peacock complained of any side effects to his doctors. In fact, during a visit to the Southeast Pain Management Center on November 6, 2002, Peacock denied suffering from any side effects as the result of Lortab. (R. 236.) Given the lack of medical records indicating that Peacock's medication caused any debilitating side effects, the court concludes that the Commissioner did not err in failing to discuss the effects of his medications on his ability to work.

To the extent Peacock asserts that the Commissioner failed to consider the combination of his impairments, he is not entitled to relief. The Commissioner must consider every impairment alleged by Peacock and determine whether the alleged impairments are sufficiently severe - either singularly or in combination - to create a disability. *See Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986). All of the plaintiff's impairments must be considered in combination, even when the impairments considered separately are not severe. *Hudson v. Heckler,* 755 F.2d 781,785 (11th Cir. 1985). The Commissioner must state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). In this case, it is clear that the Commissioner met his burden with respect to evaluating all the evidence of Peacock's impairments in combination. He properly considered the medical evidence and properly

discredited Peacock's subjective complaints of pain and other symptoms. Thus, after careful review of the record, the court finds that the Commissioner's determination is supported by substantial evidence.

### C.  The Vocational Expert

Peacock asserts that the ALJ erred in failing to include all of the restrictions found by the consultative physician when questioning the vocational expert. To the extent Peacock is arguing that the ALJ should have incorporated more limitations in his questions to the vocational expert, the court disagrees for two reasons. First, the ALJ sufficiently incorporated Dr. Ellis' functional limitations in his hypothetical to the vocational expert. The ALJ specifically asked the vocational expert to consider the effect of Dr. Ellis' functional limitations on Peacock's ability to work. (R. 380-81.) The vocational expert concluded that those limitations would not preclude Peacock's performing light work jobs. (R. 381) Second, as the court has explained, substantial evidence supports the Commissioner's findings regarding Dr. Ellis' limitations on the plaintiff. The ALJ was not obligated to ask the vocational expert about limitations not supported by the record. The court finds that the ALJ did not commit error in his questioning of the vocational expert about all possible restrictions.[8] The hypothetical sufficiently included Peacock's impairments and the ALJ included those aspects of the medical record, including Dr. Ellis' consultative examination, that he found to be supported by the evidence. The court must accept the factual findings of

---

[8] The court notes that Peacock does not specify which impairments or restrictions the ALJ failed to consider or incorporate in his hypothetical to the vocational expert. It is not the court's responsibility to seek out facts in support of the plaintiff's position; rather, the burden is on the parties to formulate arguments and present facts in support of their positions. *See generally Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinker Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994).

the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## VI. Conclusion

Accordingly, it be and is hereby

ORDERED that the decision of the Commissioner be AFFIRMED. A separate judgment will issue.

Done this 15th day of May, 2008.


                                                /s/Charles S. Coody
                                          CHARLES S. COODY
                                          UNITED STATES MAGISTRATE JUDGE